# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**CARL J. TATE**                                                              **PLAINTIFF**
**ADC #105109**

v.                              No: 4:19-cv-00390 BSM-PSH

**CYNTHIA T. NELSON,** *et al.*                                          **DEFENDANTS**

## PROPOSED FINDINGS AND RECOMMENDATION

## INSTRUCTIONS

The following Recommendation has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

### I. Introduction

Plaintiff Carl J. Tate, an inmate confined at the Randall Williams Unit of the Arkansas Department of Correction (ADC), filed this *pro se* 42 U.S.C. § 1983 action against Cynthia T. Nelson ("Nelson") on June 6, 2019. Doc. No. 1. In it, he

identifies Nelson as a physical examiner for Correct Care Recovery Solutions. Tate then filed an amended complaint clarifying his claims and adding Rory Griffin ("Griffin"), a director for Correct Care Solutions, as a defendant.[1] Doc. No. 7. Tate alleges that Nelson performed a medical assessment on him on May 26, 2016 after he was transferred from the Ouachita County jail to the ADC's Ouachita River Correctional Unit. *Id.* at 4. He further alleges that during this medical assessment, he informed Nelson of a previous left wrist fracture which had required surgery, and which was still affecting him. He complains that despite being aware of his wrist problems, Nelson misclassified his medical condition, and as a result, he was assigned to field labor. Nelson states that the field labor exacerbated his wrist injury, causing additional injury and resulting in surgery. *Id.* With respect to Griffin, Tate alleges that he reported Nelson's "negligence" to Griffin, and Griffin is therefore also responsible. *Id.* The Court construed Tate's amended complaint as stating a deliberate indifference claim against Nelson and a corrective inaction claim against Griffin, and ordered that they be served. Doc. Nos. 8, 25 & 26.

Before the Court are motions for summary judgment filed by Nelson and Griffin, along with briefs in support and statements of fact (Doc. Nos. 38-40 & 42-44); responsive pleadings filed by Tate (Doc. Nos. 45, 48 & 52-56); and a reply filed

---

[1] The Court notes that Rory Griffin is the ADC's Deputy Director for Health & Programs. *See* https://adc.arkansas.gov/organizational-chart.

by Nelson (Doc. No. 49). Nelson's motion seeks summary judgment based on expiration of the statute of limitations and failure to exhaust administrative remedies. Griffin's motion seeks summary judgment for failure to exhaust administrative remedies. As is explained below, the Court finds that there is no genuine dispute as to any material fact, and defendants are entitled to judgment as a matter of law.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including

those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". FED. R. CIV. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Analysis

#### A. *Exhaustion of Administrative Remedies*

Defendants argue that Tate's claims should be dismissed because he failed to exhaust his administrative remedies before he filed this lawsuit. The Prison Litigation Reform Act (PLRA) requires an inmate to exhaust prison grievance procedures before filing suit in federal court. *See* 42 U.S.C. §1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002). Exhaustion under the PLRA is mandatory. *Jones v. Bock*, 549 U.S. at 211. "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life whether

4

they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA does not prescribe the manner in which exhaustion occurs. *See Jones v. Bock*, 549 U.S. at 218. It merely requires compliance with prison grievance procedures to properly exhaust. *See id.* Thus, the question as to whether an inmate has properly exhausted administrative remedies will depend on the specifics of that particular prison's grievance policy. *See id.*

Pursuant to the ADC's grievance policy (AD 14-16), inmates are provided Unit Level Grievance Forms as part of the Inmate Grievance Procedure. *See* Doc. No. 39-3 at 4. To resolve a problem, an inmate must first seek informal resolution by submitting a Step One Unit Level Grievance Form within 15 days after the occurrence of the incident. *Id.* at 5. Inmates are to "specifically name each individual involved for a proper investigation and response to be completed by the ADC." *Id.* at 4. The policy provides that only one grievance form

> can be submitted per grievance and only one problem/issue should be stated in the grievance, not multiple problems/issues. An inmate must use a separate form for each issue. Only one issue will be addressed. Additional problems/issues contained in the grievance will not be considered as exhausted.

*Id.* at 5. An inmate must be "specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." *Id.* at 5-6. A problem solver

investigates the complaint and provides a written response at the bottom of the form. *Id.* If the inmate is not satisfied with the resolution, he may then complete Step Two of the grievance procedure and submit the form as a formal grievance. *Id.* at 8. If the inmate receives no response, or if the inmate is not satisfied with the response, the inmate can appeal to the appropriate Chief Deputy/Deputy/Assistant Director. *Id.* at 10-11. Once that person responds, the grievance process is exhausted. *Id.* at 12. According to the ADC's grievance policy, the entire grievance procedure should be completed within 76 working days absent an extension or unforeseen circumstances. *Id.* at 13. The grievance policy specifically states that inmates must exhaust administrative remedies at all levels of the procedure before filing a federal civil rights lawsuit. *Id.* at 17.

The ADC grievance policy requires inmates to name each individual involved. *See* Doc. No. 39-3 at 5-6. The United States Court of Appeals for the Eighth Circuit has determined that failure to name specific defendants can be a procedural deficiency, and prison officials' acceptance and resolution of a procedurally deficient grievance can serve to establish proper exhaustion. *See Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) (PLRA's exhaustion requirements are satisfied if grievance is considered on the merits, even if it could have been denied for procedural deficiencies). *See also Bower v. Kelley*, 494 Fed. Appx. 718 (8th Cir. 2012) (unpublished per curiam). The failure to name a defendant as required by the

ADC grievance policy may constitute a procedural defect that is waived if the defendant's conduct forming the basis of the claim against him or her is adequately described in the grievance and the failure to name the defendant does not prevent the ADC from investigating the grievance on the merits. *See Daniels v. Hubbard,* No. 5:14CV00360 BSM, 2015 WL 9222627, at *1–2 (E.D. Ark. Dec. 17, 2015).

### B.    *The Grievances*

Defendant Nelson submitted a declaration stating that she is an Advanced Practice Registered Nurse, and she examined Tate once, on May 26, 2016, while he was incarcerated at the Ouachita River Unit in Malvern, Arkansas. Doc. No. 39-1. Tate concedes he only saw Nelson on this one occasion. Doc. No. 48 at 1. Both Nelson and Griffin submitted declarations by Jacqueline Michelle Buterbaugh, the ADC's Medical Grievance Supervisor. *See* Doc. Nos. 39-2 & 42-1.

In Buterbaugh's declaration submitted in support of Nelson's motion for summary judgment, she states she reviewed Tate's grievance records from May 25, 2016 (the date Tate was moved to the Ouachita River Unit) to June 1, 2016 (the date Tate was transferred to another unit). Doc. No. 39-2 at 1. She also reviewed Tate's grievance records from May 25, 2016 to July 1, 2016 (one month after Tate's transfer from the Ouachita River Unit). *Id.* Buterbaugh found that Tate did not submit any medical grievances during that period of time. Doc. No. 39-2. In Buterbaugh's declaration submitted in support of Griffin's motion for summary judgment, she

states that between May 26, 2016, and June 6, 2019 (the date this lawsuit was filed), Tate did not file or fully exhaust any medical grievance that named Griffin or described his claims against Griffin. Doc. No. 42-1 at 6-7.

**1. Grievances Attached to Tate's Response to Summary Judgment Motion (Doc. No. 48)**

In his response to the summary judgment motions, Tate submitted several grievances that he believes exhausted his claims. *See* Doc. No. 48 at 14-25.

PB-19-00092

Grievance PB-19-00092 was submitted as an informal resolution on June 2, 2019, more than three years after Nelson examined Tate, and as a formal grievance on June 7, 2019. In it, Tate complains about not being referred to an orthopedic surgeon because his condition had worsened. He makes no claim against Nelson related to her May 26, 2016 examination, or against Griffin for corrective inaction related to Nelson's examination. *Id.* at 14, 18. This grievance does not exhaust Tate's claims against Nelson and Griffin.

PB-19-00093

Grievance PB-19-00093 was submitted as an informal resolution on June 5, 2019, again, more than three years after Nelson examined Tate, and as a formal grievance on June 7, 2019. In it, Tate complains that his job assignment caused him agonizing pain in his left wrist, amounting to cruel and unusual punishment. He makes no claim against Nelson related to her May 26, 2016 examination, or against

8

Griffin for corrective inaction related to Nelson's examination. *Id.* at 15, 23. This grievance does not exhaust Tate's claims against Nelson and Griffin.

### Unnumbered Grievances

Tate also attached two unnumbered grievances to his response to the motions for summary judgment. In the first, Tate submitted an informal resolution dated July 16, 2019, more than three years after Nelson examined Tate. In it, he complains that he had not received responses to his June 3 and June 5, 2019 grievances. *Id.* at 16. He makes no claims against Nelson or Griffin. This grievance does not exhaust Tate's claims against Nelson and Griffin.

In the second unnumbered grievance, Tate submitted an undated informal resolution. In it, he does make claims against Nelson related to her examination and medical classification of him on May 26, 2016, but he doesn't make any claim against Griffin. *Id.* at 25. While Tate did not date the informal resolution, the documentation by the staff receiving the informal resolution indicates it was received May 7, 2019, almost three years after Nelson examined Tate. *Id.* Tate then submitted the complaint as a formal grievance on May 10, 2019. The grievance does not assert claims against Griffin. And while it does as to Nelson, it is untimely because it was not submitted within 15 days of the occurrence complained about. This grievance does not exhaust Tate's claims against Nelson and Griffin.

Finally, Tate did not submit appeal responses for any of the grievances he attached to his response to the motions for summary judgment. However, three grievances were submitted June 2, June 5, and May 7, 2019, days before he filed this lawsuit. One was submitted July 16, 2019, after he filed this lawsuit. It would have been impossible for Tate to have completed the exhaustion process as to each before he filed this lawsuit. The Eighth Circuit Court of Appeals has held that exhaustion must occur before a lawsuit is filed. *See generally Johnson v. Jones,* 340 F.3d 624, 628 (8th Cir. 2003). Accordingly, for the reasons set forth above, these grievances cannot serve to exhaust Tate's claims.

    **2.    Grievances Attached to Tate's Motion to Add Evidence (Doc. No. 45)**

Tate also submitted copies of appeal responses for five grievances which he claims prove that he exhausted his administrative remedies, in part because Griffin signed the appeal responses. *See* Doc. No. 45 at 7. Each of those grievances is described below.

**EA-16-01577**

Tate submitted EA-16-01577 as a Step Two formal grievance. Doc. No. 45 at 2. The Deputy Director's decision, signed by Griffin, indicates that Tate's grievance, dated November 16, 2016, complained that he had not received a response to a previous grievance related to his wrist. He also complained that he was assigned to hoe squad despite his previous wrist surgery, and that his job caused

10

severe pain and swelling. *Id.* Tate appealed the initial response which found the claim without merit. In that appeal, he raised for the first time a claim based on the medical assessment he received in May 2016 – the claim he now makes in this lawsuit. *Id.* Griffin's response states that "[a]ccording to the grievance policy, an appeal cannot raise new or additional issues or complaints." *Id.* The appeal was found to be without merit.

The claim Tate made on appeal in this grievance does not serve to exhaust his claims against Nelson or Griffin. First, that claim was not raised in the initial grievance, but only on appeal. As Griffin correctly stated, additional complaints may not be raised on appeal. Second, the claim does not identify Nelson as the individual who allegedly examined Tate and "made you M-1." Third, the grievance does not name Griffin, nor does it assert that he failed to take corrective action. To comply with the ADC's grievance policy, Tate was required to specifically grieve the actions of Griffin.[2] He did not do so. Fourth, Griffin's review of Tate's

---

[2] The law is clear that *respondeat superior* is not a recognized basis for § 1983 liability. *See Keeper v. King*, 130 F.3d 1309 (8th Cir. 1997). To establish liability against a defendant in a supervisory role, an inmate must prove that the defendant was personally involved in the constitutional violation or became aware of the constitutional violation and, with deliberate indifference, failed to take corrective action or tacitly authorized the offending acts. *See, e.g., Luckert v. Dodge Cty.,* 684 F.3d 808, 817 (8th Cir. 2012); *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993). *See also Waller v. Kelley*, 956 F. Supp. 2d 1007, 1013–14 (E.D. Ark. 2013) ("Plaintiff fully exhausted several grievances raising his *inadequate medical care claim* against *some* of the named medical Defendants. . . . However, *none* of his grievances mention the *corrective action claim* that he is asserting against Defendant Kelley. Thus, his grievances did *not* put ADC officials on notice that he thought Defendant Kelley was failing to properly review or

grievance as a Deputy Director does not constitute exhaustion as to Griffin. Griffin's review of the grievance as Deputy Director did not place him on notice that Tate believed he failed to take appropriate corrective action regarding the medical care received in May 2016. And finally, even had Tate asserted his claim in the initial grievance, it would not have been timely submitted within 15 days of the occurrence. Instead, it would have been submitted almost six months after the occurrence. For these reasons, this grievance did not exhaust Tate's claims against Nelson and Griffin.

**EA-17-00057, EA-17-00080, EA-17-00145, and EA-17-00165**

EA-17-00057

Tate submitted EA-17-00057 as a Step Two formal grievance on January 14, 2017. Doc. No. 45 at 3. In it, the Deputy Director's decision indicates that Tate complained he had broken his wrist in December 2017, he had been provided pain medication, the pain medication was not providing adequate relief, and he was in constant pain. The grievance was found to be without merit because Tate had failed to follow sick call procedure. On appeal, Griffin found the appeal to be without merit. *Id.*

---

respond to his medical grievance appeals or was otherwise failing to take appropriate corrective action regarding the medical care he was receiving from the other Defendants.") (emphasis in original).

EA-17-00080

Tate submitted EA-17-00080 as a Step Two formal grievance on January 23, 2017. Doc. No. 45 at 4. According to the Deputy Director's decision, Tate complained that a pin in his broken wrist had become loose, that he was in severe pain, and his medication did not manage his pain. *Id.* On appeal, the claim was found to be without merit. On appeal to the Deputy Director, Tate raised a new claim that the cause of his wrist pain was misdiagnosed. Griffin upheld the finding of no merit, and noted that an appeal cannot raise new or additional issues or complaints. *Id.*

EA-17-00145

Tate submitted EA-17-00145 as a Step Two formal grievance on February 5, 2017. Doc. No. 32-5 at 4. The Deputy Director's decision indicates that Tate complained again about wrist pain following surgery, that pins placed in his wrist caused a cyst to develop, and that pain medications were not effective. *Id.* The medical department's response reviewed Tate's recent course of treatment, and found there was a delay in notifying Tate of an order renewing his pain medication. The grievance was found to be with merit but resolved. *Id.* On appeal to the Deputy Director, Tate disputed the medical department's findings. Griffin found that "[t]he

medical department properly addressed your complaint and found your grievance with merit; therefore, this appeal is without merit." *Id.*

### EA-17-00165

Tate submitted EA-17-00165 as a Step Two formal grievance on February 3, 2017. Doc. No. 45 at 6. According to the Deputy Director's decision, Tate complained that he had to go to the "pill window" to pick up Naproxin, stating he should receive the pain medication "on person." *Id.* The medical department found his grievance with merit, but resolved. *Id.* Tate appealed to the Deputy Director on grounds he was not receiving pain medication for his pain and suffering. Deputy Director Griffin found that the appeal was without merit.

Grievances EA-17-00057, EA-17-00080, EA-17-00145, and EA-17-00165 did not exhaust Tate's claims against Nelson or Griffin. They do not assert the medical indifference and failure to take corrective action claims made in this lawsuit. They do not identify Nelson or Griffin or actually assert any claims against them. Instead, they relate to complaints of treatment Tate received in January and/or February of 2017, ten months after the events Tate complains of in his lawsuit. Additionally, Griffin's review of the grievance appeals as Deputy Director did not and could not constitute exhaustion as to claims against him. Those reviews did not place Griffin on notice that Tate believed he failed to take appropriate corrective action regarding the medical care received in May 2016. For these reasons,

grievances EA-17-00057, EA-17-00080, EA-17-00145, and EA-17-00165 did not exhaust Tate's claims against Nelson or Griffin.

### IV. Conclusion

For the reasons stated above, Tate did not exhaust his administrative remedies against Nelson and Griffin, and Tate's § 1983 claims against them should be dismissed without prejudice.[3]  The undersigned therefore recommends that the defendants' motions for summary judgment (Doc. Nos. 38 & 42) be granted, and this case be dismissed without prejudice.

DATED this 17th day of June, 2020.

_____
UNITED STATES MAGISTRATE JUDGE

---

[3] Because Tate has not exhausted his remedies with respect to his claims against defendant Nelson, the Court does not address her argument that his complaint is barred by the statute of limitations. However, in response to Tate's assertion that the Court has already ruled on this issue, the Court clarifies that it has not previously ruled on whether this claim is barred; the Court's prior recommendation only concerned Griffin's arguments regarding the statute of limitations. See Doc. No. 25.